The next case is number 21-1796, United States v. Quentin Spinks. At this time, would Attorney Hart please introduce himself on the record to begin? Good morning, Your Honors, and may it please the Court, Eamon Hart with Brandon Isaacson for Appellant Quentin Spinks. With the Court's permission, I'd like to reserve two minutes for rebuttal. Yes, you may. Thank you. At sentencing in this matter, the District Court erred as a matter of law when it conflated relevant conduct under Guideline 1B1.3 to the substantive requirements of conspiracy. And this Court can correct that error, notwithstanding the waiver found in Mr. Spinks' plea agreement, because that waiver does not cover an appeal of ancillary procedural determinations to a sentence, but only the sentence itself. Now, that issue was obviously front and center in the briefs, and I anticipate there will be questions on it, so I'm going to start there. The government routinely differentiates its plea agreements between the sentence on the one hand and the manner in which that sentence was determined on the other. We've cited a number of cases and guidance in our brief, I think it's at page 18 of the opener, showing that the government routinely does so. That comports with the realities of a sentence proceeding, where initially there's this procedural determination about the guidelines, and then there's a substantive component. The judge has to exercise their discretion, weigh the 3553AF factors, and impose a sentence. Now, here, the District of Maine uses a very narrow appeal waiver form. It does not speak to the manner in which the sentence was determined. It does not speak to, as the government points out in some other cases, any aspect of the sentence or include other broadening clauses, such as including but not limited to. Instead, it's very narrow. It waives a challenge to the conviction, which my client's not raising here, and a challenge to a sentence of imprisonment up to a set number of months. Again, my client's waiver did not include the language found nationwide about the manner in which sentence was determined. Because that wasn't included, traditional principles of contract interpretation would indicate that here the government, a repeat player that routinely executes these agreements, didn't include that term. It's not part of the bargain, so my client's case can go forward. I'm happy to address further questions on that, but given that my time is short. Let me ask you, counsel, and again, related to the issue you're going to address. You have a standard. It's clear error for fact findings and abuse of discretion for judgment calls. So how do you overcome that standard here in making this relevant conduct determination? With respect to the merits, Your Honor? The merits, yeah. Go on to merits. So the standard of review on a sentencing appeal, it's multifaceted, as this court has said. So for legal determinations, there is de novo review, and for factual determinations, it's clear error with an overall abuse of discretion standard. So here, the cardinal saying the original problem is that there was a legal error. It began with the government's argument in the district court. So what the government argued was, and it made one argument, not a factual argument, it argued Mr. Spinks has not shown that his 2017 conviction was part of the same agreement that comprised the conspiracy charged here. Now, that's unambiguously incorrect legally under this court's precedent of David versus United States, which says explicitly that under 1B1.3, relevant conduct is broader than the traditional concepts of conspiracy under the criminal law, and something can be relevant without being part of the conspiracy. So the government makes that argument, and it's the only argument it makes in the district court. In the district court, in ruling on the objection, it's a very short ruling. What the district court says is, this wasn't part of the same conspiracy. The conspiracy charged, the district court used the word charged, was distribution in Maine, and the 2017 sale was in New York. So again, the district court embraces the legally erroneous argument that the government made. So here, we have a fundamental legal error that's reviewed de novo. That legal error, to the extent that there was any fact finding in the district court, that legal error infects the fact finding. When you go to fact finding, one issue here, there's no objection. Your client did not object to a pre-sentence report, and the pre-sentence report is basically saying it's not relevant conduct. So given that failure to object to the pre-sentence report, how do you overcome that also? So as the government argues, you can take facts from an unobjected to facts in the pre-sentence report, but here the issue isn't really what the facts were. The parties aren't really disputing the facts. Instead, it's what the legal effects of those facts is. So what the PSR says, the only thing that's accepted and agreed to by my client is the essential facts. The conspiracy was sales in Maine, and the 2017 New York charge was a sale in New York. We're not contesting that. The facts really aren't in dispute here. Instead, the question is how you characterize that. And simply because facts aren't objected to in the PSR, that doesn't mean that legal conclusions, I mean the PSR itself says. But the problem is if there's no objection, the district judge could have heard a witness or two witnesses and made that determination had it been necessary. The government could have brought witnesses. Your client could have brought witnesses, but the record was not developed, and nobody pursued that. So again, and the standard, it's a very high standard to overcome. What I would say to that is my client did bring evidence to bear. So first of all, we do have evidence just from the PSR that's uncontested that favors my client's claim here. So as we pointed out, I think we had a comparison table at page 40 of the brief, but the facts underlying the 2017 conviction in New York were very similar to the facts underlying the drug sales in this conspiracy. You have the same drug. You have essentially the same amounts, the same price per sale. So that all points to similarity. What this court has said is under 1B1.3, you look at three factors for determining whether conduct is relevant, similarity, repetition, and temporal proximity. So two of those factors, temporal proximity and repetition, I don't really think there's any dispute that they're met here. The 2017 sale took place while the conspiracy was ongoing. And as the government points out in its brief, pages 3 to 4, I think Mr. Spinks, my client, he was regularly engaged in individual hand-to-hand drug transactions just like the one in New York. So you have two out of three of those factors already met, which, by the way, I'll say that's more than this court upheld a relevance finding on in U.S. v. Bryant, where this court said, yeah, two out of the three factors are not met, but the offenses are similar enough. Let me ask you, was this table, this argument, and I'm looking at page 40 of your brief, was that argued with a table like that to the district court? It was raised. I mean, I don't know that he used the table, but if you look at it. Obviously, you know, I was a former district judge. If I see this, I'm going to start asking questions. If nobody brings this up in this manner, you know, nobody objects to the pre-sentence report, let's move along. That's probably what's going to happen. So that's why I'm asking was did your client move in a sufficient manner so that the record below could have been developed? He did, Your Honor. Pages 131 to 132 of the appendix, you'll see trial counsel says this was the same drug, the same amounts, the same price, happens during the same time frame. He made all the arguments that we're making here. This was well preserved, and the government isn't even arguing that this issue was not preserved. If you go back to the waiver and the plea agreement, is there any evidence that either your client or his counsel below or the AUSA who handled it better had ever used a form that had the more belt and suspenders type approach of actually referencing the manner? I'm not aware of any evidence. I think this is a very standard form in the District of Maine, but as we pointed out, that's unusual. And the government, the thing that I think is important to remember about this, the government is a singular entity. You mean it's unusual because the in any manner language is used in other jurisdictions, not in Maine. Is that what you mean? Yes. So, I mean, in other jurisdictions, you see the manner in which it was determined language sometimes. You'll also see broadening clauses, as the government points out, Candelario Ramos, you had any aspect of the sentence including but not limited to that. But I guess my point is it wasn't unusual in Maine. Not a point, but. No, I agree. This is the standard language in Maine. But the key point on that, Your Honor, is, again, the government's a singular entity. And there's a case, and we pointed out, I think it's Transfiguration out of the Ninth Circuit, says the government's a repeat player. If it chooses to include clauses, and I see my time has expired, if I may finish my thought. Yes, you may. If it chooses to include clauses sometimes in its plea agreements and not in others, it can't expect to get the benefit of them when it doesn't. I see my time's out, so I'll preserve the balance for rebuttal. Thank you. Thank you. At this time, would counsel for the United States please come and introduce yourself on the record to begin. May it please the Court, good morning. My name is Lindsay Feinberg on behalf of the government this morning. Instead of putting the cart before the horse, I'd like to begin by talking about the appeal waiver. The panel's raised some, I think, important questions that merit further discussion. The first is, what is standard in the District of Maine? This language is standard in the District of Maine. I, in preparing for this case, have asked some of my colleagues who have been in the office far longer than I how long this language has been in use. And while it's not in the record, I would submit to the Court. Well, I think, why don't we try to stay with the record. Okay. I would submit to the Court that it is used here, and it is used in other cases, as evidenced by the Donath case, which is the only case in which this Court has squarely addressed the same appeal waiver language. And indeed, in the Donath decision, the petitioner there was raising a similar argument about criminal history and addressed only the miscarriage of justice prong of Teeter, the third part of the test. So while it has not ever been squarely addressed by this Court, whether this language is unambiguous and what is a sufficient explanation of it by the District Court during a Rule 11 plea colloquy, it is at the very least instructive that other practitioners in the District of Maine viewed a foregone conclusion to the fact that when you're challenging the way in which your sentence is imposed, it needs to be above the ceiling set forth in the plea agreement and in the appeal waiver provision. Turning to what happened here, I think there are a few parts of the record that are particularly instructive, one of which is the way in which Judge Woodcock explained the appeal waiver to Mr. Spinks. If the Court goes back and looks at the record appendix on pages 58 through 60, Judge Woodcock does much more than a brief or cursory explanation of what Mr. Spinks is waiving. In fact, the record indicates that Judge Woodcock is essentially reading the appeal waiver out loud, line by line, to Mr. Spinks and explaining to Mr. Spinks what that means in the judge's own words. This is far beyond what this Court typically looks for in seeing if a District Court judge has sufficiently explained an appeal waiver to a defendant. At one point, the Court goes so far as to say, this goes on to say that you waive the right to appeal a sentence of imprisonment that does not exceed 125 months. Now, unlike your right to appeal your conviction, you would have, but for the terms of this agreement, a right to appeal any sentence that I impose. Do you understand? End quote. Mr. Spinks responds in the affirmative. The Court then goes on to say, quote, however, under the terms of this agreement, and again, these agreements are usually upheld as a matter of law, if I impose a sentence of 125 months or less, you will have no right to appeal that sentence to a higher court. Do you understand? End quote. Again, Mr. Spinks responds in the affirmative. Finally, the District Court explains, in case there was any ambiguity, quote, that means for all intents and purposes, if I impose a sentence of 125 months or less, I will be the only judge to review the legality of the sentence. Do you understand? End quote. Again, Mr. Spinks responds in the affirmative. This is a thorough and searching explanation of how District Court judges in Maine interpret this language. It's consistent with the government's interpretation, and at the time in which it was explained to Mr. Spinks, he made clear that he understood it. While he takes a different approach on appeal in terms of whether this language is binding and what it encompasses, it's certainly clear that at the time it was explained to him, he expressed no uncertainty. He did not ask to talk to his lawyer. He did not ask any follow-up questions. And that is compelling evidence from the record that the parties to this contract, because, again, we interpret plea agreements like contracts, both the government and Mr. Spinks had a shared understanding of what the terms of the deal were. That shared understanding is further evidenced when the court looks ahead to something that's somewhat unique in this case, which is what transpired after a sentence was imposed. At the sentencing hearing, there's a second discussion about the appeal waiver in the record appendix, pages 187 through 189. And after imposing sentence, Judge Woodcock again discusses with Mr. Spinks his right to appeal. And at that point, Mr. Spinks says that he knows that he entered into it. Quote, let me see, Mr. Spinks says, quote, I just don't know why I entered into a plea agreement in the first place. He goes on to say, I would have never entered into it, never. And when the judge asks, well, I think you did, Mr. Spinks explains, I know I did. And then there's some further discussion where the court says, well, I have before me a plea agreement that has your name on it. And Mr. Spinks says, I know, I know that I entered into it, but now I've, and I'm exerpting from there. But the end of the quote is, now I've waived my rights, all my rights. So if there was any uncertainty about the terms of the deal, based on how the plea agreement is written, and based on how it was explained, what transpired at sentencing should extinguish any doubt. Mr. Spinks still understood, after sentence was imposed, that he had waived his right to appeal a sentence, because he was sentenced to 115 months, which is 10 months less than the 125 months that the parties agreed to. The appeal waiver should be enforced in accordance with Teeter and its progeny. Turning to the merits of the relevant conduct argument that has been raised below, the panel's raised several important questions about what the court exactly had before it. This was not a well-developed argument. The person who was best suited to provide the court with information like is set forth on the table on appeal would be Mr. Spinks and trial counsel. They did not do that. They made a brief argument before the district court about commonalities that they observed between a repeat drug dealer, dealing drugs in Batavia, New York, on one day, and then pumping drugs into Maine. Let me ask you something. Go ahead. Going to the table at page 40 of the petitioner's appeal, was, and if you remember from the record, was it argued in this precise way, type of drug, volume per sale, price, time period, location, New York versus the Maine conspiracy, or was it just very generic? I remember it as very generic, Your Honor. Both in the objection that was filed before the district court, the written objection, and the way in which it was presented at sentencing. That's not to say that the issue was not brought up at all. The government concedes that Mr. Spinks' trial attorney brought up this issue, to be clear. However, compared to some of the other issues that were sort of vigorously contested at sentencing, for instance. Didn't this come out just a day before sentencing? Wasn't that, if I'm remembering the transcript correctly? And I agree, you know, Mr. Spinks' lawyers didn't spend a lot of time on this, but neither did the government, right? This was sort of came out of nowhere, kind of. Yes, Your Honor. In the realm of the objections that were sort of thoroughly addressed by the parties, this did receive comparatively short shrift. And I think the reason why is because this case involved a fair amount of objections, many of which were resolved in Mr. Spinks' favor. Except this one really does have to do with the calculation of the actual sentence, right? I mean, it plays directly into whatever the judge's calculations are going to be about the sentence. Yes, Your Honor. If, in fact, the judge were to conclude that this was relevant conduct under sort of expanded relevant conduct principles, it would move Mr. Spinks from a criminal history Category 4 to a 3. It would not change the calculation of the base offense level because of the negligible relatively amount of drugs involved, but it would impact the sentence in that way, yes. But the sentencing range would be lower, and then, of course, the judge could go up or go down or within the guideline. Yes, Your Honor. That is exactly true. And it's also exactly true that Judge Woodcock already gave Mr. Spinks the benefit of the Equal Act, which was in some respects fortuitous because the government now has new guidance about the Equal Act. But at the time in which sentence was imposed, the guideline range, as calculated, was based not upon the one-to-one ratio of powder to crack cocaine. That was based for a variance. The guideline range itself, I believe, was 168 to 240, if I'm remembering correctly. I'm sorry. Well, I'm confused by your waiver argument, not your plea. I understand your argument that the plea agreement waiver applied, but then now turning to the alternative of if we assume without deciding to put that one aside and we turn to the relevant conduct issue, you seem to be telling us now that that wasn't preserved fully below? No, Your Honor. The issue itself was preserved. But what I would say is as this Court's made clear time and again. So if the issue was preserved, then we have the preserved error standard of review? Yes, Your Honor. So there's no waiver other than the waiver in the plea agreement? Yes, other than the waiver in the plea agreement. We're not arguing that the issue itself has been raised. And there's no reason counsel would have been talking about these facts of the similarities other than arguing that it was relevant conduct? I cannot put myself in trial counsel's shoes to know why else he may or may not have made a judgment. Well, as someone very knowledgeable about this case, about criminal law, you can't think of any other reason they would have been mentioning it, which is presumably why you told us in your brief preserved procedural reasonableness claim is before us. Yes, Your Honor. We agree it's preserved procedural. But I would add, I would hasten to add because it's important, that any time we're talking about the defendant's attempt to prove the applicability of a guideline section that enhances their sentence, the burden is on them. So while it may be preserved when we're talking about burden, it was Mr. Spinks' burden, and indeed Mr. Spinks was probably best suited of everyone in the courtroom to explain how this was actually relevant to this drug conspiracy in Maine. And he chose not to present sufficient evidence before the Court. Well, what fact is he relying on now that wasn't put in the record below? I see my time is expiring, Your Honor. May I briefly? Yes, you may. I don't recall. I would have to look back in the record and tell you. Thank you. Thank you. Thank you, counsel. At this time, if Attorney Hart would please reintroduce himself on the record. Thank you, and may it please the Court, Eamon Hart once again with Brandon Isaacson for appellant. I'll just make a couple of very brief points. Starting in on the waiver, the government mentions the Donath case. As the government concedes, the issue wasn't briefed in that case. It wasn't raised. The defendant said, I'm only relying on miscarriage of justice. So Donath simply doesn't have any presidential force here. Going to the citations that the government made to the plea colloquy, that, I think, hurts the government rather than helps. Judge Woodcock was very careful to only say the sentence. He didn't say the sentence and manner in which it was determined. And, in fact, he doesn't get to discussing the guidelines until after he's discussed the waiver, after he's confined it to the sentence, and only then does he move on to informing the defendant about it. But the only thing, the only relief you're asking for is for a change in the sentence. Well, what we're asking for is for remand to change the guidelines, after which the court would, you know, have to impose a new sentence, which would likely be consistent with the guidelines, because there's nothing in the record in this case suggesting that the court, you know, would have varied upward. The government asked for a guideline sentence. The court said, I'm going to grant the government's request for a guideline sentence. So I do think that it's likely the sentence would change on remand. But the thing that has to happen first is the procedure has to be done correctly. We have to get to the correct guidelines. But you have no interest in the guideline calculation being accurate, other than as it might affect the sentence. Well, certainly. I mean, otherwise it would move. But I do think, again, that goes back to the... And the same thing could be said for the application of 3553A factors. So I think it's a little bit different. Those are highly discretionary. So the best way, I think if I'm understanding your question, the broader issue I think the court's getting at is what did my client give up, essentially? What he gave up was a substantive reasonableness challenge. The best way to harmonize the language that the government uses, you know, in other cases nationwide and this language is, okay, this is cabined to your waiving a substantive reasonableness challenge, which is not nothing. I mean, appellants make those all the time. So I do think that that's what he gave up. But that's not the challenge we're making here. I see my time is very short. If I may respond to one other point. This issue was preserved about the merits pages. I think it's 131 to 132. It's well preserved. All the facts are discussed. The argument is discussed by trial counsel. He did an able job. So thank you very much. With that, I'd ask that the sentence be vacated. Thank you. That concludes the argument in this case.